## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

MATTHEW REID HINSON,

      Petitioner,

v.                                   Case No. 3:18-cv-1306-TJC-LLL

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

      Respondents.

_____

## ORDER

### I.   Status

      Petitioner, an inmate of the Florida penal system, is proceeding on a pro se Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2254 (Doc. 1). He challenges a state court (Duval County, Florida) judgment of conviction for second degree murder. Petitioner is serving life imprisonment. Respondents filed a Response (Doc. 7) with exhibits (Docs. 7-1 to 7-10; "Resp. Ex."). Petitioner filed a Reply (Doc. 9). This case is ripe for review.

### II.   Governing Legal Principles

#### A. Standard of Review

      The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal habeas corpus petition. See Ledford v.

<u>Warden, Ga. Diagnostic & Classification Prison</u>, 818 F.3d 600, 642 (11th Cir. 2016). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" <u>Id.</u> (quoting <u>Greene v. Fisher</u>, 565 U.S. 34, 38 (2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the petitioner's claims on the merits. <u>See</u> <u>Marshall v. Sec'y Fla. Dep't of Corr.</u>, 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue an opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. <u>See</u> <u>Harrington v. Richter</u>, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation,

> the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning. But the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed.

<u>Wilson v. Sellers</u>, 138 S. Ct. 1188, 1192 (2018).

When a state court has adjudicated a petitioner's claims on the merits, a federal court cannot grant habeas relief unless the state court's adjudication of

the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(1), (2). A state court's factual findings are "presumed to be correct" unless rebutted "by clear and convincing evidence." Id. § 2254(e)(1).

> AEDPA "imposes a highly deferential standard for evaluating state court rulings" and "demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 773 (2010) (internal quotation marks omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Richter, 562 U.S. at 101 (internal quotation marks omitted). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. [at 102] (citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003)). The Supreme Court has repeatedly instructed lower federal courts that an unreasonable application of law requires more than mere error or even clear error. See, e.g., Mitchell v. Esparza, 540 U.S. 12, 18 (2003); Lockyer, 538 U.S. at 75 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); Williams v. Taylor, 529 U.S. 362, 410 (2000) ("[A]n unreasonable application of federal law is different from an incorrect application of federal law.").

Bishop v. Warden, GDCP, 726 F.3d 1243, 1253-54 (11th Cir. 2013) (internal citations modified).

## B. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003); Strickland v. Washington, 466 U.S. 668, 687 (1984)). Courts employ a two-part test when reviewing ineffective assistance of counsel claims. See Strickland, 466 U.S. at 687.

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." 466 U.S. at 688. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. Id. at 689. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687.

> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id. at 693. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 687.

Richter, 562 U.S. at 104 (internal citations modified).[1]

The two-part Strickland test applies to challenges to the validity of guilty pleas based on ineffective assistance of counsel. Hill v. Lockhart, 474 U.S. 52, 58 (1985). The petitioner must still demonstrate that counsel's performance was deficient. See id. at 56-59; Lynch v. Sec'y Fla. Dep't of Corr., 776 F.3d 1209, 1218 (11th Cir. 2015). To establish prejudice, however, the petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59 (footnote omitted); Lynch, 776 F.3d at 1218.

There is no "iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward, 592 F.3d at 1163. Both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation; thus, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). "If it is easier to dispose of an

---

[1] This two-part Strickland standard also governs a claim of ineffective assistance of appellate counsel. Overstreet v. Warden, 811 F.3d 1283, 1287 (11th Cir. 2016). "Appellate counsel has no duty to raise every non-frivolous issue and may reasonably weed out weaker (albeit meritorious) arguments. Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." Id. (internal quotations and citations omitted). To satisfy the prejudice prong, a petitioner must show a reasonable probability that "but for the deficient performance, the outcome of the appeal would have been different." Black v. United States, 373 F.3d 1140, 1142 (11th Cir. 2004); see also Philmore v. McNeil, 575 F.3d 1251, 1264-65 (11th Cir. 2009) (prejudice results only if "the neglected claim would have a reasonable probability of success on appeal")

ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." <u>Strickland</u>, 466 U.S. at 697.

A state court's adjudication of an ineffectiveness claim is afforded great deference.

> "[T]he standard for judging counsel's representation is a most deferential one." <u>Richter</u>, 562 U.S. at 105. But "[e]stablishing that a state court's application of <u>Strickland</u> was unreasonable under § 2254(d) is all the more difficult. The standards created by <u>Strickland</u> and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." <u>Id.</u> (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the <u>Strickland</u> standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard," then a federal court may not disturb a state-court decision denying the claim. <u>Richter</u>, 562 U.S. at 105.

<u>Hittson v. GDCP Warden</u>, 759 F.3d 1210, 1248 (11th Cir. 2014) (internal citations modified). In other words, "[i]n addition to the deference to counsel's performance mandated by <u>Strickland</u>, the AEDPA adds another layer of deference--this one to a state court's decision--when we are considering whether to grant federal habeas relief from a state court's decision." <u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th Cir. 2004). As such, "[s]urmounting

Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010).

### III.   Analysis[2]

On October 29, 2012, Petitioner was charged by information with second degree murder. See Resp. Ex. A at 11. The murder occurred on October 7, 2012, at Fionn MacCool's pub at the Jacksonville Landing, where Petitioner had gone to meet his wife and his wife's friend, Lindsey Blackwell. Petitioner had been drinking before arriving at the pub, and he continued to drink once there. While at the pub, Petitioner pulled out a knife, slashed another man's throat, calmly put the knife back in his pocket, and exited the pub. Shortly thereafter, Petitioner was arrested while trying to exit the parking garage in his vehicle.

On May 21, 2013, Petitioner entered a plea of guilty as charged. See Resp. Ex. M at 106-24. After a full day[3] sentencing hearing on January 10, 2014, the trial court sentenced Petitioner to life imprisonment. See id. at 125-592.

### A. Ground One, Subpart 1

Petitioner argues that his trial counsel was ineffective "by failing to obtain an independent drug test of him, where there was evidence that he had

---

[2] Petitioner raised some of his ineffective assistance of counsel claims on direct appeal and in his postconviction motion filed pursuant to Florida Rule of Criminal Procedure 3.850. Petitioner recognizes, however, that the ineffective assistance of counsel claims were not properly raised on direct appeal. See Doc. 1 at 15 n.1.

[3] The sentencing hearing began at 8:00am and did not end until after 7:00pm. See Resp. Ex. M at 129, 583-91.

been drugged; thereby supporting a viable defense of involuntary intoxication." Doc. 1 at 6. "Petitioner avers that had his counsel properly advised him of the availability of an involuntary intoxication defense, and performed a competent investigation thereon, he would not have pled guilty, and would have insisted upon proceeding to jury trial." Id.

He raised this claim in his pro se amended postconviction motion filed pursuant to Florida Rule of Criminal Procedure 3.850. Resp. Ex. M at 58-60. The postconviction court denied the claim:

> In essence, the Defendant alleges that counsel was ineffective for failing to obtain an independent drug test of the Defendant to then use as a defense of involuntary intoxication. Such a test is not required to raise a defense of involuntary intoxication and would not prove that the Defendant was "drugged" as he suggests. A defense of involuntary intoxication would require testimony from the Defendant and perhaps other independent witness[es] about the condition of the Defendant at the time of the offense. Thus, the Defendant's allegation does not rise to the level of ineffective assistance of counsel.

Id. at 99-100. Petitioner appealed, and the First District Court of Appeal per curiam affirmed the denial of this claim. See Resp. Ex. P.[4]

This Court addresses this claim in accordance with the deferential standard for federal court review of state court adjudications. Upon thorough

---

[4] As noted below in Ground Eight, the First DCA reversed and remanded on Ground Eight only, but otherwise affirmed the postconviction court's order without comment. See Resp. Ex. P.

review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented. The record supports the state court's adjudication. Thus, Petitioner is not entitled to federal habeas relief on this ground.

Even assuming the state court's adjudication of this claim is not entitled to deference, the claim has no merit. Petitioner signed a written plea of guilty form indicating that he was pleading guilty because he was guilty. Resp. Ex. A at 278-79. By signing the form, Petitioner agreed that he was advised of the nature of the charges against him; the statutory offenses included within such charges; the range of maximum allowable punishments for each charge; all possible defenses, including "intoxication"; and all circumstances in mitigation. Id. He also agreed that he understood the rights he was giving up by pleading guilty and indicated he had ample time to discuss the agreement with his attorneys. Id. At the plea hearing, he affirmed, under oath, that he was pleading guilty because he was guilty, he understood his rights, and had sufficient time to speak with his attorneys. See Resp. Ex. M at 108-16. He also affirmed that he had read and understood the plea form, and that he had reviewed the form with his attorneys. Id. at 112-13.

Even assuming a drug test was administered and Petitioner tested positive, that evidence alone would not support Petitioner's assertion that he "had been drugged." Petitioner relies on his statements to the police following his arrest that he felt like he was under the influence of an unknown drug, and his contention that Lindsey Blackwell, who was also arrested at the pub that evening, had hydrocodone pills in her purse that belonged to Petitioner's wife. See Doc. 1 at 6.

Petitioner's assertions that he was "drugged" unbeknownst to him are speculative, at best. And his allegations in other claims in his Petition that he committed the offense in self-defense undermine any claim that he did not understand the nature of his actions. Petitioner has failed to demonstrate that his counsel was deficient by not having him drug tested. But even assuming deficient performance, Petitioner has not shown prejudice. He has not shown a reasonable probability that, but for counsel's alleged error in not having him drug tested, Petitioner would not have pleaded guilty and would have insisted on going to trial.[5] In light of the foregoing, this ground is due to be denied.

---

[5] The Court further notes that in Florida, "[t]he defense of involuntary intoxication is not available for general intent crimes, including . . . second-degree murder." Wilson v. State, 871 So. 2d 298, 301 (Fla. 1st DCA 2004) (citing Jackson v. State, 699 So. 2d 306, 308 (Fla. 1st DCA 1997)).

**B. Ground One, Subpart 2**

According to Petitioner, his trial counsel was ineffective for "failing to advise him of several viable defenses." Doc. 1 at 7. He argues that the victim was the aggressor and he was simply defending himself. Id. He contends that "there is no evidence in this case that would have prevented defense counsel from mounting a viable 'Stand Your Ground' defense." Id. He claims that the manager of the pub "observed part of the incident and recalled in police reports that there was a fight." Id. He also claims that "several other witnesses remember hearing a commotion behind them and turned around to see the Petitioner had stabbed the victim." Id. According to Petitioner, a police officer told the media that "'the victim was involved in a disturbance with two other individuals before being stabbed by the [Petitioner].'" Id. Petitioner claims "[t]hese reports and statements made by witnesses and police alike all correspond and point to the fact that the alleged victim in this case was, more likely than not, the aggressor, just as Petitioner has maintained from the beginning." Id.

Petitioner raised this claim in his amended Rule 3.850 motion. Resp. Ex. M at 61-64. The postconviction court denied the claim:

> The Defendant's allegation here is misplaced. Raising the issue of "stand your ground" requires the filing of a pretrial motion and, in essence, places the matter before the Court for the Court to determine if the Defendant's actions were justified. In making such

> a finding the Court would then determine that the Defendant was immune from prosecution and the case would be concluded.
>
> Previously the filing of such a motion seemed to be the preferred method. However, more recently Defendant[]s have not been filing such motions, apparently for strategic reasons. Not filing such a motion continues to protect the Defendant's right to remain silent until trial and does not preclude the defense of self-defense at trial. Failure to raise such an issue pretrial[] does not rise to the level of ineffective assistance of counsel.

Id. at 100 (paragraph enumeration omitted). Petitioner appealed, and the First DCA per curiam affirmed the denial of this claim. See Resp. Ex. P.

This Court addresses this claim in accordance with the deferential standard for federal court review of state court adjudications. Upon thorough review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented. Thus, Petitioner is not entitled to federal habeas relief on this ground.

Even assuming the state court's adjudication is not entitled to deference, this claim has no merit. Petitioner signed a written plea of guilty indicating that he was pleading guilty because he was guilty. See Resp. Ex. A at 278-79. By signing the form, Petitioner agreed that he was advised of the nature of the

charges against him; the statutory offenses included within such charges; the range of maximum allowable punishments for each charge; all possible defenses, including "self-defense"; and all circumstances in mitigation. Id. He also agreed that he understood the rights he was giving up by pleading guilty and indicated he had ample time to discuss the agreement with his attorneys. Id. At the plea hearing, he affirmed, under oath, that he had reviewed the form with his attorneys, and that he was pleading guilty because he was guilty, he understood his rights, and had sufficient time to speak with his attorneys. See Resp. Ex. M at 108-16.

The only evidence supporting Petitioner's self-defense theory is his own story that someone "grabbed" him or "put their hands" on him and he felt "threatened," so he grabbed the back of the victim's head and slit his throat. It is undisputed that the victim was unarmed. Petitioner's version of events, even if true, does not support the use of deadly force. Given the evidence in the record, it is unlikely that Petitioner's self-defense theory would have prevailed. Based on the extensive testimony and evidence presented at the sentencing hearing, it is clear that the defense strategy was to plead guilty to second degree murder and argue mitigation at sentencing. Had Petitioner not pled guilty, the state was considering indicting him on first degree murder and potentially seeking the death penalty. See id. at 580. Considering the record, the Court finds

13

Petitioner has failed to show either deficient performance or resulting prejudice. Thus, this ground is due to be denied.

### C. Ground One, Subpart 3

Petitioner argues that his trial counsel was ineffective because "counsel never informed him of the nature of the charges against him (second-degree murder), the essential elements of those charges, factual basis underlying those charges, or the legal options and alternatives that were available." Doc. 1 at 7-8. According to Petitioner, he "repeatedly told his attorneys that he never intended to kill the victim, but only reacted in defense of his person due to the aggressive actions by the victim." Id. at 8.

Petitioner raised this claim in his amended Rule 3.850 motion. Resp. Ex. M at 65-68. The postconviction court denied the claim, finding it was "refuted by the record and specifically, the transcript of May 21, 2013 and the plea dialogue conducted by the judge." Id. at 100. Petitioner appealed, and the First DCA per curiam affirmed the denial of this claim. See Resp. Ex. P.

This Court addresses this claim in accordance with the deferential standard for federal court review of state court adjudications. Upon thorough review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light

14

of the evidence presented. The record supports the state court's adjudication. Indeed, Petitioner signed a written plea of guilty form and confirmed at the change of plea hearing that he had read and understood the form, and that he had reviewed it with his attorneys. See Resp. Ex. M at 112. Petitioner testified that he had enough time to talk to his attorneys, the attorneys answered all of his questions, and he did not need more time to speak with them. See id. at 108-09. Although the defense stipulated to a factual basis, the prosecutor outlined the facts supporting the charge, and Petitioner averred that he understood the sentencing guidelines. See id. at 110-11, 118. Further, Petitioner affirmed that he understood the rights he was giving up by pleading guilty, and he confirmed that he was pleading guilty because he was guilty. Id. at 112-16.

Petitioner's solemn declarations in court carry a strong presumption of truth. Blackledge v. Allison, 431 U.S. 63, 74 (1977); see also Winthrop-Redin v. United States, 767 F.3d 1210, 1217 (11th Cir. 2014) (stating that defendants who make statements under oath at a plea colloquy bear a heavy burden to show his statements were false) (quotation and citation omitted). Thus, Petitioner's representations at the plea hearing "constitute a formidable barrier in any subsequent collateral proceedings." Blackledge, 431 U.S. at 73-74; see also Stano v. Dugger, 921 F.2d 1125, 1152 (11th Cir. 1991) (recognizing that the record of the plea proceedings may contradict any subsequent claim that

counsel's representation was deficient). Considering the record, the Court finds that Petitioner is not entitled to federal habeas relief on this ground.

### D. Ground One, Subpart 4

Petitioner asserts that his trial "counsel was ineffective for failing to file a motion to either dismiss or reduce the charge on the ground that the evidence was insufficient to proceed on the charged offense." Doc. 1 at 8. He claims that the state had no evidence to prove he acted with "ill will, malice, hatred, spite, or an evil intent." Id. at 9. He argues that "[a]lthough several witnesses reported seeing part of the altercation between the decedent and the Petitioner, police failed to find anyone who witnessed the actual beginning of the incident." Id. at 8. Petitioner maintains that his statements to the police are "the only account as to what took place at that critical stage," and he has "consistently maintained that the decedent (who he had never before met or spoken to) attacked him without any word or provocation or warning, and that [Petitioner] was placed in fear of his life by the surprise attack and acted without thought to protect himself." Id. He further contends that his counsel "urged" him to enter a guilty plea "without first advising him of the critical elements the State would have to prove beyond a reasonable doubt," and "the State coerced the Petitioner into taking defense counsel's unprofessional advice to plead to second-degree murder by stating, on the record and in the presence of the Petitioner, that he

16

had told defense counsel 'flat out, you either plead . . . or I'm indicting him on first-degree murder and . . . seek[ing] the death penalty.'" Id. at 9.

Petitioner raised this claim in his amended Rule 3.850 motion. Resp. Ex. M at 68-73. The postconviction court denied the claim: "The Defendant waived his right as it relates to the Motion, by entering a plea of guilty to the charge and admitting guilt. Further, the Defendant acknowledged and admitted that there was a factual basis to support the plea and charge of second degree murder." Id. at 101. Petitioner appealed, and the First DCA per curiam affirmed the denial of this claim. See Resp. Ex. P.

This Court addresses this claim in accordance with the deferential standard for federal court review of state court adjudications. Upon thorough review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented. Thus, Petitioner is not entitled to federal habeas relief on this claim.

Even assuming the state court's adjudication is not entitled to deference, this claim has no merit. The gravamen of Petitioner's claim is that he would have insisted counsel file a motion to dismiss or reduce the charge and he would not have pled guilty if counsel had informed him that (1) the state's evidence

17

was insufficient to prove he committed the murder with ill will, hate, spite, or evil intent; and (2) the state's threat to indict him on first degree murder if he did not plead guilty would be "unconstitutional[ly] malicious and vindictive." Doc. 1 at 9.

By signing the plea of guilty form and confirming at the plea hearing that he reviewed and understood the form, Petitioner affirmed that he had "not been threatened, coerced, or intimidated by any person, including [his] attorney, in any way in order to get [him] to enter th[e] plea." Resp. Ex. A at 278. He further affirmed that he was entering the plea "freely and voluntarily." Id. at 279. A sufficient factual basis for second degree murder was presented at the plea hearing, and Petitioner averred that he understood he was giving up his right to have the state prove his guilt beyond a reasonable doubt. See Resp. Ex. M at 110, 115, 118. The evidence in the record showing Petitioner's actions before and immediately after the murder supports the factual basis presented at the plea hearing. Thus, Petitioner's counsel was not ineffective for failing to advise Petitioner that the evidence was insufficient.

Additionally, it was not improper for the state to advise Petitioner that it was planning on indicting him on first degree murder and possibly seeking the death penalty. See Bordenkircher v. Hayes, 434 U.S. 357, 364 (1978) (recognizing that it is entirely permissible to confront a defendant with the risk of more serious charges if he decides to proceed to trial). Indeed, knowing that

18

the state had the option to amend the charged offense allowed Petitioner to fully assess his options and decide whether to enter the plea. Counsel was not ineffective for failing to file a motion to dismiss or reduce the charges. This ground is due to be denied.

### E. Ground One, Subpart 5

"Petitioner avers his court appointed defense counsel was ineffective for inducing him to enter an open plea of guilty by assuring him that the judge would sentence him within the recommended guidelines range, thus rendering the plea involuntary and unknowing where the judge instead imposed a statutory maximum sentence." Doc. 1 at 10. Petitioner claims that his counsel advised him "that he knew the judge well and that she would 'be lenient.'" Id. He argues that "[c]ounsel further misadvised the Petitioner that the State was 'about to upgrade the charge to premeditated first-degree murder,' and if they did so and the Petitioner went to trial he would 'be convicted and sentenced to death.'" Id. He claims that "counsel went over with the Petitioner the questions he expected the judge to pose to the Petitioner during the plea colloquy and advised the Petitioner as to what his answers to those questions had to be in order for the court to accept his plea of guilty." Id.

Petitioner raised this claim in his amended Rule 3.850 motion. Resp. Ex. M at 74-77. The postconviction court denied the claim, finding the allegations to be "refuted by the transcript dated May 21, 2013." Id. at 101. Petitioner

appealed, and the First DCA per curiam affirmed the denial of this claim. <u>See</u> Resp. Ex. P.

This Court addresses this claim in accordance with the deferential standard for federal court review of state court adjudications. Upon thorough review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented. On the plea of guilty form signed by Petitioner, it specifically states: "I have not been offered any hope of reward, better treatment, or certain type of sentence to get me to enter this plea. I have not been promised by anyone, including my attorney, that I would actually serve any certain amount of time." Resp. Ex. A at 278. During the plea hearing, the following colloquy occurred between the trial court and Petitioner:

> THE COURT: Has anyone, including the attorneys who stand here with you this morning, has anyone promised you anything in return for the guilty plea that you have entered to the charge of second degree murder?
>
> THE DEFENDANT: No, ma'am.
>
> . . . .
>
> THE COURT: So the guidelines are a minimum of 20.5 years in Florida State Prison . . . to life in prison . . . . [D]o you understand that?

20

THE DEFENDANT: Yes, ma'am.

THE COURT: And do you further understand that your plea is to the Court . . . . And that I would be determining what your sentence would be at a later time after a Presentence Report is ordered and after, of course, a hearing, at which time you have the right to present evidence and testimony on your behalf as well as the State has an opportunity to present testimony, perhaps the victim, in those matters; do you understand that, sir?

THE DEFENDANT: Yes, ma'am.

**THE COURT: And has anyone, your attorneys, others, has anyone made predictions or any sort of estimates to you, sir, on what the Court might do?**

**THE DEFENDANT: No, ma'am.**

THE COURT: And are you pleading guilty, Mr. Hinson, because you are guilty?

THE DEFENDANT: Yes, ma'am.

Resp. Ex. M at 110-12 (emphasis added). At the conclusion of the colloquy, the judge found, in relevant part:

I find that Mr. Hinson understands the nature of the charge, that being second degree murder, and that he understands the consequences of his plea of guilty, that being that the Court can sentence him to a minimum under the guidelines of 20.5 years to life in prison. There's no minimum mandatory. And Mr. Hinson has expressed that he understands those possibilities. And that he further understands that the Court would be passing sentence at a later time, and that he further has expressed understanding that

21

> there are no negotiated dispositions and no promises
> have been made to him.

Id. at 119. Petitioner's representations at the plea hearing "constitute a formidable barrier in any subsequent collateral proceedings." Blackledge, 431 U.S. at 73-74. Considering the record, the Court finds that this claim is due to be denied.

### F. Ground One, Subpart 6

Petitioner claims that his "counsel was ineffective for urging him to plead guilty knowing that at the time he was being treated with mind-altering psychotropic drugs that rendered him incapable of making intelligent and knowing decisions, thereby making the plea involuntary." Doc. 1 at 10. According to Petitioner, his "plea of guilty is involuntary because it was induced through the misrepresentations of defense counsel at a time when the Petitioner was suffering mental health problems (mainly PTSD) and was under the influence of doctor prescribed anti-psychotropic drugs." Id. at 11.

Petitioner raised this claim in his amended Rule 3.850 motion. Resp. Ex. M at 78-80. The postconviction court denied the claim, finding the allegations to be "refuted by the transcript dated May 21, 2013." Id. at 102. Petitioner appealed, and the First DCA per curiam affirmed the denial of this claim. See Resp. Ex. P.

This Court addresses this claim in accordance with the deferential standard for federal court review of state court adjudications. Petitioner signed a written plea of guilty indicating that he was "not under the influence of any substance, drug, or condition (physical, mental, or emotional), which interferes with [his] appreciation of the entire plea agreement into which [he was] entering and all consequences thereof," and that he was properly taking "any medication which is essential to [his] full, complete, and unimpaired understanding of the plea agreement." Resp. Ex. A at 279. At the plea hearing, he affirmed that he read and understood the plea form that he had signed. See Resp. Ex. M at 112. Also at the hearing, the trial court asked Petitioner whether he was "under the influence of any alcohol, drugs or prescription medications," to which Petitioner responded, "No, ma'am." Id. at 110. At the conclusion of the hearing, the trial court made the following findings:

> I find that there is a factual basis for the plea of guilty that Mr. Hinson entered to the second degree murder charge. I find that his plea is free and voluntarily [sic]. I find that Mr. Hinson has given the Court very careful attention, that he has been responsive to the questions that I have asked, that he has additionally been offered a chance to ask the Court questions and Mr. Hinson indicated that he had no questions.
>
> I find that Mr. Hinson understands the nature of the charge, that being second degree murder, and that he understands the consequences of his plea of guilty, that being that the Court can sentence him to a minimum under the guidelines of 20.5 years to life

> in prison. There's no minimum mandatory. And Mr. Hinson has expressed that he understands those possibilities. And that he further understands that the Court would be passing sentence at a later time, and that he further has expressed understanding that there are no negotiated dispositions and no promises have been made to him.

Id. at 118-19.

Upon thorough review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented. Thus, Petitioner is not entitled to federal habeas relief on this claim.

## G. Ground One, Subpart 7

According to Petitioner, his "counsel was ineffective for failing to locate, interview, and call an available defense witness, Kimberly Russell, thereby rendering his plea involuntary and unknowing." Doc. 1 at 11. Petitioner claims this witness was listed in a police report as making "a statement to the police that she had 'witnessed the victim's actions during the course of the evening.'" Id.

Petitioner raised this claim in his amended Rule 3.850 motion. Resp. Ex. M at 81-84. The postconviction court denied the claim, finding that "[t]he inability to locate a defense witness does not in and of itself rise to the level of

ineffective assistance of counsel. It is clear from the record that Defendant's counsel conducted extensive discovery prior to the Defendant entering his plea of guilty." Id. at 102. Petitioner appealed, and the First DCA per curiam affirmed the denial of this claim. See Resp. Ex. P.

Upon thorough review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented. Thus, Petitioner is not entitled to federal habeas relief on this ground.

Even assuming the state court's adjudication is not entitled to deference, the claim has no merit. According to Respondents, the statements Petitioner attributes to "Kimberly Russell do not appear in the trial court record or the postconviction record." Doc. 7 at 79. Attached to Petitioner's pro se brief on direct appeal is a document he purports to be part of a police report from the night of the murder. See Resp. Ex. D. As to Kimberly Russell, the document states:

> Kimberly Russell pointed out a female that might have been involved in the incident and the victim. Kimberly observed the suspect walk away from the restaurant.
>
> . . . .

As I was reviewing the scene, a female detained at the front bar (later identified as Kimberly Russell) was asking Officer Bydik when she could leave and she seemed very agitated. I walked over to her (Russell) and introduced myself and explained that the process would take some time and Russell explained that she was separated from her husband and she was worried about him and wanted to leave. I was trying to help resolve this issue when a female in a black dress (later identified as Lindsay Blackwell) had gotten up from a corner table and began aggressively walking toward Russell. Blackwell was loudly arguing with Russell and officers instructed her to return to her table. She was reluctant and continued to argue. She sat at the table for a short period of time. Russell then explained to me that Blackwell had been in the restaurant and had been visiting several different men to include the victim.

Id.

The record shows that defense counsel conducted discovery before Petitioner decided to plead guilty, including the taking of several depositions of civilians and law enforcement. There is no evidence to support Petitioner's suggestion that counsel was required to interview this potential witness. Moreover, Petitioner's claim is wholly speculative in that he does not know whether Ms. Russell's testimony would have supported his position. See Doc. 1 at 12 ("Counsel did not know whether Ms. Russell's testimony would be favorable or not because they had not interviewed her. At a minimum, a reasonably competent attorney would have interviewed Ms. Russell to ensure whether or not there was any favorable testimony available from her, which

26

would contribute to building a defense."). Petitioner has shown neither deficient performance nor resulting prejudice. Thus, this claim is due to be denied.

### H. Ground One, Subpart 8

Petitioner argues that his "counsel was ineffective for failing to investigate and prepare for trial, thus inducing his plea and rendering it involuntary and unknowing due to his bona fide fear that his attorney was not prepared to try the case before the jury." Doc. 1 at 12. Petitioner raised this claim in his amended Rule 3.850 motion. Resp. Ex. M at 84-85. The postconviction court denied the claim, finding that "[t]he Defendant's allegations are refuted by a review of the court file and the extensive discovery done by trial counsel prior to the Defendant's entry of his plea." Id. at 102. Petitioner appealed, and the First DCA entered a written opinion reversing the postconviction court's denial of this claim only and remanding for the postconviction court to re-address this claim. See Resp. Ex. P.[6] On remand, the postconviction court entered a supplemental order denying this claim and made the following findings:

> The Defendant in the instant case was arrested on October 8, 2012 and charged with Second Degree Murder.

---

[6] The First DCA found this claim to be "colorable and not conclusively refuted by the attachments to the order." Resp. Ex. P.

The Defendant entered a Plea of Guilty on May 21, 2013, approximately seven and one-half (7½) months after his arrest. . . .

At the time the Defendant entered his Plea of Guilty his case was <u>not</u> set for trial, but rather was set for a Pre-Trial Hearing.

The Defendant's sentencing hearing was originally scheduled for September 18, 2013; however, it was continued on numerous occasions. The Defendant was finally sentenced (after a two[7] day hearing) on January 10, 2014, approximately eight (8) months after the entry of his plea.

During the aforementioned eight (8) month period the Defendant never suggested that his plea had been entered involuntarily.

. . . .

Again, this Court notes the case was not set for trial at the time of Defendant's plea.

The Defendant entered his plea freely and voluntarily with the full knowledge and understanding of the nature and consequences of the plea.

The Defendant never filed a motion seeking to withdraw his plea prior to sentencing, nor did the Defendant suggest at sentencing that his plea had been entered involuntarily.

The Court Docket clearly demonstrates the extensive amount of work done by defense counsel which includes investigating and preparing the case.

---

[7] The transcript of the sentencing hearing reflects that it began at 8:00am and ended after 7:00pm the same day. <u>See</u> Resp. Ex. M at 129, 583-91.

> Furthermore, the Defendant testified at his sentencing hearing and at no time during his testimony did he raise the issue that he entered a plea involuntarily due to being fearful that his attorneys were not going to be prepared for trial.
>
> Defendant filed a Motion for Sentence Reduction, and again, never mentioned that his plea was entered involuntary, but rather quite the contrary.

Resp. Ex. U at 3-5 (internal record citations omitted). Petitioner appealed, and the First DCA per curiam affirmed the denial of this claim without a written opinion. Resp. Ex. X.

This Court addresses this claim in accordance with the deferential standard for federal court review of state court adjudications. Upon thorough review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented. Thus, Petitioner is not entitled to federal habeas relief on this claim.

## I.  Ground One, Subpart 9

Petitioner argues his counsel was ineffective "by advising him to enter a plea without informing him that an insanity defense was available." Doc. 1 at 13. He alleges that his counsel did not advise him of this defense even though

counsel knew "of the psychologist's report concluding that Petitioner suffered from PTSD at the time of the offense." Id.

Petitioner raised this claim in his amended Rule 3.850 motion. Resp. Ex. M at 86-87. The postconviction court denied the claim, finding that "[t]here is no evidence to support the Defendant's suggestion that an insanity defense was a viable defense. In fact, the Defendant was examined by a mental health expert prior to sentencing. Dr. Harry Krop testified on behalf of the Defendant at sentencing." Id. at 102. Petitioner appealed, and the First DCA per curiam affirmed the denial of this claim. See Resp. Ex. P.

Upon thorough review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented. By signing the plea of guilty form, Petitioner acknowledged that he discussed all possible defenses with his attorney, including "insanity." Resp. Ex. A at 278. Dr. Krop, Petitioner's expert at the sentencing hearing, specifically testified he believed Petitioner was sane at the time of the offense. Resp. Ex. M at 284-85; see also Resp. Ex. A at 309-10 (Dr. Krop's summary report). The record fully supports the state court's adjudication of this claim. Thus, Petitioner is not entitled to federal habeas relief on this ground.

### J. Ground One, Subpart 10

Petitioner argues that his counsel "was ineffective for failing to move to suppress his confession on the ground that he was under duress and too intoxicated to waive his rights." Doc. 1 at 13. He claims that "other than the statements Petitioner made to police, the State lacked any evidence whatsoever as to the cause of the altercation and the Petitioner's intent toward the decedent." Id.

Petitioner raised this claim in his amended Rule 3.850 motion. Resp. Ex. M at 88-90. The postconviction court denied the claim, finding that "[t]he Court file and a review of the Defendant's interview with police refutes the allegations contained herein." Id. at 103. Petitioner appealed, and the First DCA per curiam affirmed the denial of this claim. See Resp. Ex. P.

This Court addresses this claim in accordance with the deferential standard for federal court review of state court adjudications. Upon thorough review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented. Portions of Petitioner's interview with the police following his arrest on the night of the murder were played at the sentencing hearing. Petitioner assured the detectives that he was "totally sober," and that

he could understand what the detectives were saying and effectively communicate with them. Resp. Ex. M at 389-90. The transcript reflects that Petitioner appropriately responded to the detectives' questions. See id. at 384-437. Because the record fully supports the state court's adjudication, this Court finds that Petitioner is not entitled to federal habeas relief on this ground.

### K. Ground One, Subpart 11

Petitioner argues that "[t]he trial court deprived Petitioner of due process of law and created a manifest injustice by relying solely upon a stipulation between defense counsel and State instead of requiring the State to establish a factual basis for Petitioner's guilty plea." Doc. 1 at 14. He alleges that "the parties stipulated to a factual basis without ever putting those facts on the record." Id. He argues that his counsel stipulated to his guilt and had "counsel held the State to its burden of establishing on the record a factual basis for his plea of guilt, the State would have been unable to establish a prima facie evidence of ill will, hate, spite, or evil intent toward the victim." Id.

In his pro se brief on direct appeal, Petitioner argued that his "guilty plea/conviction is invalid due to no factual basis determined and because counsel misadvised [him] of [the] nature of [the] charge." Resp. Ex. D at 19 (capitalization omitted). He asserted that the "trial court relied on insufficient facts to support [his] conviction." Id. at 20. The First DCA per curiam affirmed

Petitioner's conviction and sentence without issuing a written opinion.[8] <u>See</u>

Resp. Ex. E.

Petitioner also raised this claim in his amended Rule 3.850 motion. Resp.

Ex. M at 91-94. The postconviction court denied the claim:

> The transcript dated May 21, 2013 refutes the allegations contained in ground eleven. Specifically, the Assistant State Attorney stated that the State would be prepared to prove that Mr. Hinson actually utilized a knife to slash the throat of William Pettry and that the sentencing guidelines were 20.5 years to life. The Court then asked Mr. Hinson if he heard what the prosecutor had said and the Defendant indicated that he had heard same. Later the Court asked the Defendant if he was pleading guilty because he was guilty and the Defendant responded, "yes ma'am." Further, while the defense did stipulate to a factual basis, the Assistant State Attorney proceeded to recite the factual basis despite the stipulation.

<u>Id.</u> at 103. Petitioner appealed, and the First DCA per curiam affirmed the

denial of this claim. <u>See</u> Resp. Ex. P.

Upon thorough review of the record and the applicable law, the Court

concludes that the state court's adjudications of these claims (ineffective

assistance of counsel and trial court error) were not contrary to clearly

---

[8] On direct appeal, Petitioner's counsel filed a brief pursuant to <u>Anders v. California</u>, 386 U.S. 738 (1967), contending that the appeal was "wholly frivolous." <u>See</u> Resp. Ex. C. Petitioner filed a pro se brief. <u>See</u> Resp. Ex. D. The First DCA did not order the state to file a response before per curiam affirming Petitioner's conviction and sentence. <u>See</u> Resp. Ex. E; <u>see also</u> <u>Hinson v. State of Florida</u>, No. 1D14-375 (Fla. 1st DCA 2014).

established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented. At the change of plea hearing, the prosecutor advised that "the State would be prepared to prove that [Petitioner] actually utilized a knife to slash the throat of William Pettry, therefore there are no minimum mandatories because a gun was not involved. The guidelines are 20.5 years to life." Resp. Ex. M at 110. Although the defense stipulated there was a factual basis, the state advised:

> And the State would have been prepared to prove beyond a reasonable doubt, if that happened, Judge, that on October 7, 2012, in the County of Duval in the State of Florida, that Matthew Hinson did unlawfully by an act imminently dangerous to another and evidencing a depraved mind regardless of human life although without any premeditated design to effect the death of any particular individual, did kill William Pettry, a human being, by stabbing Mr. Pettry and while doing so, he did carry, display, use or threaten to use a deadly weapon, contrary to Section 782.04 of the Florida Statutes.

Id. at 118.

The record supports the state court's adjudications. Thus, Petitioner is not entitled to federal habeas relief on this ground.

## L. Ground One, Subpart 12

According to Petitioner, "[t]he cumulative impact of deficiencies on Petitioner's court appointed defense counsel's performance prejudice[d] him and

34

deprived him of effective assistance of counsel." Doc. 1 at 14. Petitioner raised this claim in his amended Rule 3.850 motion. Resp. Ex. M at 95-97. The postconviction court denied the claim: "In that the Court found no single error, the cumulative effect would not rise to the level of ineffective assistance of counsel." Id. at 104. Petitioner appealed, and the First DCA per curiam affirmed the denial of this claim. See Resp. Ex. P.

None of Petitioner's individual claims warrant relief; thus, there is nothing to accumulate. See Morris v. Sec'y, Dep't of Corr., 677 F.3d 1117, 1132 (11th Cir. 2012). Petitioner's counsels' alleged errors, neither individually nor cumulatively, deprived him of a fair trial or due process. Considering the record, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented. Thus, Petitioner is not entitled to federal habeas relief on this ground.

## M. Ground Two

Petitioner avers that his appellate "counsel was ineffective for failing to raise and argue the prosecutor's misconduct, which constituted fundamental error, and which is apparent on the face of the record." Doc. 1 at 16. Petitioner states that "[d]uring closing argument at Petitioner's sentencing hearing, the State Attorney made improper and highly inflammatory statements concerning

his personal opinion as to why Petitioner plead guilty to the charged offense instead of going to trial." Id.

Petitioner raised this claim in a petition for writ of habeas corpus filed with the First DCA. Resp. Ex. Z. The First DCA denied the petition on the merits. Resp. Ex. AA.

After the presentation of testimony and evidence at the sentencing hearing, Petitioner's counsel, in closing argument, asked the court to depart downward from the guidelines (15 years) or at a minimum, impose the minimum prison sentence under the guidelines (20.5 years). See Resp. Ex. M at 553-54, 583. The state recommended that the court impose a life term of incarceration. See id. at 582.

At the conclusion of the state's closing argument, the following occurred:

> THE COURT: I just have a couple of questions, Mr. Moody, concerning your recommendation.
>
> Mr. Hinson entered a plea of guilt, there was no trial, he has a minimum record, he served his country, I just want to ask you, sir, how you factor that in?
>
> . . . .
>
> [THE STATE]: If you're asking for a personal opinion, as well as a professional opinion, I'll be more than happy to provide it, Judge. A personal opinion and a professional opinion combined, what was he going to argue? He was seen by an entire bar full of people stabbing an unarmed man and shrugging and walking his way out. He was captured immediately thereafter. The reality is, and this is not something

36

that I typically I believe that we would go into, but since I have been inquired from the Court, I can tell this Court that the day Mr. Hinson pled to this Court straight up I was shocked. I didn't think - - I thought when Mr. Eler told me that it was a joke, because he came up and he said, hey, what are his guidelines. I said, I haven't done them yet, why, because he's going to plead out today. I said, are you kidding me? I didn't know.

But the reason that, Judge, I would submit to you - - and again, Mr. Eler, since you are asking this I will answer it and he can respond if he wishes, we have had multiple conversations and I told him flat out, you either plead - - you've got two choices because you're not getting a deal from me, you plead him straight up to the Court and you beg for mercy and whatever Judge Bass gives him she gives him, or I'm indicting him on first degree murder and we might seek the death penalty, because that's how strongly the State of Florida felt about what he did. Based on that conversation, I would submit to you, that's why the defendant decided, well, I don't want to be facing the death penalty, I don't really have a good defense, so really my only option here is to plead straight up to the Judge, because unlike - - and the way that Ms. Bedell phrased it, the State of Florida has never made a 15 year recommendation.

A presentence investigative officer with the Department of Corrections in her presentence investigative report has made a recommendation, I believe, of no less than 15 years. The State of Florida, being the State Attorney's Office, has never made an offer, we have never made a recommendation and, candidly speaking, whenever I saw that PSI I contacted . . . that probation officer's supervisor because they're not allowed to give a below guideline recommendation, so I contacted to find out, I thought she was going to be here today, she was on the defense witness list, and I was really looking forward to cross-

examining her, because I wanted to know how someone in her position, who knew the facts as she knew them, felt like 15 years was an appropriate sentence for an individual who murdered an unarmed man, and I wanted to know how many different people he was going to have to kill before she might make a recommendation that's at least a guideline sentence.

. . . .

I understand where the Court is going. I understand that there are mitigating factors. That this Court has the discretion and has the right before it that you may wish and that you may choose to consider, would have to consider it, but you may wish to use those. Whether or not you think it's fair to give someone a life sentence who decided not to go to trial and plead straight up and beg for mercy I understand is a legitimate question, but it is not the State of Florida's concern that he decided to plead straight up.

The State of Florida's concern is what he did, and based on the actions of what he did, we believe that he deserves life in prison. It's not a - - this was not a bar fight. This was not mutual combat. This was an armed man slitting the throat of an unarmed man who just happened to be there having a good time, and because of that he died.

Resp. Ex. M at 578-82. In rebuttal, Petitioner's counsel responded, in pertinent part: "Mr. Moody did make that statement at some point to us that he could indict our client, but just so the Court is aware, we'd already had discussions with him about the possibility of entering a plea, and Mr. Eler wanted to do some additional depositions before we let him do that." Id. at 582. The court then took a recess before pronouncing sentence. See id. at 583-84. After

38

extensively detailing the factors the court considered and making specific findings, the court imposed a life sentence. See id. at 584-91.

Before a direct appeal was filed, Petitioner, through counsel, filed a motion for reconsideration of the life sentence, arguing in relevant part:

> During the sentencing hearing the State suggested to this Honorable Court that the Defendant only entered the plea of guilt in order to not risk being charged with Murder in the First Degree. This is untrue and significantly diminishes the true remorse the Defendant feels for the grievous act that occurred on October 7, 2012 resulting in the death of William Pettry.
>
> Entering a plea of guilt was a consideration that the Defendant weighed heavily and did not take lightly. It was not made solely for the purpose of avoiding a possible death penalty. It was an acceptance of the responsibility of the violent act he caused.
>
> In addition, it was the Defendant's constitutional right to have a trial and it is not a right that should be taken lightly. The implication made by the State that the Defendant's plea was only made in fear of an indictment for Murder in the First Degree, does not take into consideration the totality of the circumstances that occurred since the Defendant's arrest that influenced the Defendant to waive his right to a trial and enter a plea of guilty.

Resp. Ex. I (paragraph enumeration omitted). Defense counsel then provided a timeline of the actions taken during discovery and communications with Petitioner about pleading guilty, which culminated in Petitioner's decision to plead guilty "well before [he] considered the possibility that he would be

indicted for murder in the First Degree." <u>Id.</u> Defense counsel also reviewed other evidence and testimony presented at the sentencing hearing and asked the court to reconsider Petitioner's sentence. <u>See</u> <u>id.</u>

The trial court entered an order denying the motion for reconsideration: "While the Court has considered the circumstances the Defendant has brought to the Court's attention in the Motion, the Court is not inclined to modify the Defendant's previously imposed sentence." Resp. Ex. J.

Upon thorough review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented. Thus, Petitioner is not entitled to federal habeas relief on this ground, and Ground Two is due to be denied.

Accordingly, it is

**ORDERED**:

1.     The Petition (Doc. 1) is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**.

2.     The **Clerk of Court** shall enter judgment dismissing this case with prejudice, terminate any pending motions, and close the file.

3.    If Petitioner appeals the denial of his Petition, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.[9]

**DONE AND ORDERED** at Jacksonville, Florida, this 3rd day of March, 2022.



TIMOTHY J. CORRIGAN
United States District Judge

JAX-3 3/3
c:
Matthew Reid Hinson, #J50319
Counsel of Record

---

[9] The Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Here, after consideration of the record as a whole, the Court will deny a certificate of appealability.